IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILDA SOLIS, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR | : | CIVIL ACTION |
| v. | : | |
| JOHN J. KORESKO, V, et al. | : | NO. 09-988 |
| REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST | : | |
| v. | : | |
| GRETCHEN CASTELLANO | : | |
| v. | : | |
| REGIONAL EMPLOYERS ASSURANCE LEAGUES VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION TRUST BY PENMONT BENEFIT SERVICES, INC., PLAN ADMINISTRATOR, et al. | : | NO. 03-6903 |
| HARRY R. LARKIN, et al. | : | |
| v. | : | |
| PENN PUBLIC TRUST, et al. | : | NO. 11-7421 |
| GREGORY A. OSWOOD, et al. | : | |
| v. | : | |
| PENN PUBLIC TRUST, et al. | : | NO. 13-0666 |
| BEN-LIN ASSOCIATES, LTD., et al. | : | |
| v. | : | |
| PENN PUBLIC TRUST, et al. | : | No. 13-5268 |

MEMORANDUM

McLaughlin, J.                                    September 17, 2013

On September 16, 2013, the Court issued a limited injunction order for a limited period, appointing an independent fiduciary to administer the plans, employer arrangements, and the two trusts at issue (Single Employer Welfare Benefit Plan Trust ("SEWBPT") and Regional Employers Assurance League Voluntary Employees' Beneficiary Association Trust ("REAL VEBA")) in these actions. The independent fiduciary is to report back to the Court on or before October 28, 2013, with respect to its inventory of all assets of REAL VEBA, SEWBPT, and its constituent employer-level plans or arrangements.

The Court took this action because of a series of events starting on June 5, 2013, when plaintiffs filed their Motion for Temporary Restraining Order and Preliminary Injunction in the Castellano (Docket No. 292), Oswood (Docket No. 34), and Larkin (Docket No. 52) cases captioned above. The Department of Labor ("DOL") similarly filed an Application for Temporary Restraining Order and Preliminary Injunction (Docket No. 377) on June 19, 2013. The DOL also filed a Motion for Clarification of Order and Supplemental Order (Docket No. 472), and SEWBPT filed a Motion to Modify Freeze Orders and for Expedited Consideration (Docket No. 485). This series of events culminated in an all-day hearing held on September 16, 2013.

The Court incorporates into this decision its prior decision on the motion for partial summary judgment, its orders of June 28 (Docket No. 392), July 9 (Docket No. 407), and July 23, 2013 (Docket No. 436), and the transcripts of the hearings and arguments it held on June 26 (Docket No. 397), June 28 (Docket No. 420), July 8 (Docket No. 429), July 9 (Docket No. 431), July 22 (Docket No. 458), and July 30, 2013 (Docket No. 467).

The DOL filed a Complaint on March 9, 2009, alleging that Defendants John Koresko, Jeanne Bonney, PennMont Benefit Services, Inc. ("PennMont"), Koresko Law Firm ("KLF"), Koresko and Associates, P.C. ("KAPC"), Penn Public Trust ("PPT") and Community Trust Co. (hereinafter Mr. Koresko, PennMont, KLF, KAPC, and PPT will be referred to together as the "Koresko Defendants") were fiduciaries to ERISA-covered employer-level plans. The DOL further alleged that these fiduciaries had violated ERISA by, among other things, transferring death benefits outside the trust holding the plans' assets.

That same death benefit arrangement is at issue in more than ten other cases pending before this Court, including those captioned above. One such case was filed as late as last week, requesting a temporary restraining order and preliminary injunction. See Ben-Lin Associates, Ltd. et al. v. Penn Public Trust et al., No. 13-5268 (E.D. Pa.). In Real VEBA v.

-3-

Castellano, No. 03-6903, Mr. Koresko brought suit against a claimant for a declaratory judgment that she was not entitled to any benefits. Several cases, including Larkin et al. v. Penn Public Trust et al., No. 11-7421, and Oswood et al. v. Penn Public Trust et al., No. 13-0666, involve attempts by plaintiffs to extricate the life insurance policies on employees' lives from the arrangements at issue here, prior to the deaths of the insureds.

The DOL moved in February 2012 for partial summary judgment based on the Defendants' transfer outside the trust of death benefits paid on the policies held by the Castellano, Decor Coordinates, and Cetylite Plans. (Docket No. 267). On August 3, 2012, this Court granted in part and denied in part the DOL's Motion, holding that Mr. Koresko, Ms. Bonney and PennMont had violated ERISA as asserted by the DOL, but deferring judgment on the DOL's request for relief. (Docket Nos. 314, 315). The Court held that ERISA applied to certain employer-level plans that participated in REAL VEBA and that the moneys in REAL VEBA were plan assets. Solis v. Koresko, 884 F. Supp. 2d 261 (E.D. Pa. 2012).

On November 8, 2012, the DOL filed a Supplemental Complaint alleging that the Defendants violated ERISA when they applied for and obtained loans secured by insurance policies

-4-

owned by the trust and deposited the loan proceeds in their own accounts. (Docket No. 349).

On June 19, 2013, the DOL filed an Application for Temporary Restraining Order and Preliminary Injunction (Docket No. 377), arguing that Mr. Koresko, PennMont, PPT, KAPC, and KLF were continuing to violate ERISA and dissipate plan assets. Following a telephone conference on June 28, 2013 (Docket No. 420), the Court scheduled a hearing on the temporary restraining order motions for July 8, 2013 (Docket No. 391).

On June 28, 2013, the Court also signed an interim order, freezing several bank accounts pending the hearing on July 8, 2013. (Docket No. 392). During that freeze, PennMont, and PPT and its officers, directors, fiduciaries, and other agents were authorized to pay insurance premiums on life insurance policies owned by or for the benefit of REAL VEBA/SEWBPT or its constituent employer-level plans or arrangements.

Following the hearing held on July 8 and 9, 2013 (Docket Nos. 429, 431), the Court issued on July 9, 2013 an order granting a limited injunction. (Docket No. 407). Due to Mr. Koresko's medical concerns, the Court conducted the July 8, 2013 hearing as an opportunity to hear about the status of Mr. Koresko's physical condition and to hear arguments regarding the appropriate form of interim relief to implement pending an

evidentiary hearing.  The hearing included hours of discussion with Mr. Koresko about the facts regarding the administration of the trusts and the documentary record in the case created by the various motions for a temporary restraining order and preliminary injunction and the existing summary judgment record.

Mr. Koresko has argued that his ability to participate in a deposition, evidentiary hearing, or other proceeding is hindered by a concussion Mr. Koresko sustained approximately five years ago, and that a recent automobile accident exacerbated.  <u>See</u> Docket No. 391 (order modifying July 8, 2013 hearing to include a status hearing on Mr. Koresko's health and postponing deposition of Mr. Koresko); Docket No. 399 (declaration of Lawrence Koresko detailing Mr. Koresko's injuries); Docket No. 429 (transcript of July 8 hearing).[1]

Mr. Koresko's health is relevant to a few actions taken by the Court.  For example, no evidentiary hearing or depositions could be held due to Mr. Koresko's insistence that his medical condition prevented him from participating in such proceedings.  Mr. Koresko's health also supported the Court's appointment of the independent fiduciary because of an apparent lack of control over the REAL VEBA, SEWBPT, and associated plans and arrangements, due to that illness.

---

[1] Other filings relevant to Mr. Koresko's medical condition have been filed under seal.  <u>See</u> Docket Nos. 401, 402.

Although the Court has bent over backward to accommodate Mr. Koresko's health concerns, the Court had ordered the Koresko Defendants to provide, prior to the July 8 hearing, a second declaration from Mr. Koresko's physician, Dr. Bradley, regarding Mr. Koresko's test results, Dr. Bradley's diagnosis of Mr. Koresko, and the doctor's opinion of Mr. Koresko's ability to participate in a deposition and evidentiary hearing. (Docket No. 391). No such affidavit has ever been forthcoming.

Immediately before the July 8 hearing was set to begin, Mr. Koresko's counsel at Montgomery, McCracken, Walker & Rhoads ("Montgomery, McCracken"), informed the Court that they would be moving to withdraw as counsel. Mr. Koresko had been previously informed of his counsel's intention and of the hearing date but did not attend the hearing in person. The Court discussed the issue of withdrawal of counsel with the counsel from Montgomery, McCracken and Mr. Koresko in chambers on the record and ex parte. Mr. Koresko then participated in the discussion of substantive issues in open court via phone. See Docket 407 at 2 n.1 (portion of July 9, 2013, order discussing Mr. Koresko's participation by phone).

Montgomery, McCracken filed their formal motion to withdraw as counsel for the Koresko defendants on July 16, 2013. (Docket No. 424, under seal). The DOL filed its opposition to that motion on July 25, in the timeframe ordered by the Court,

-7-

arguing that the motion was filed less than four weeks before the scheduled preliminary injunction hearing and that representation by Mr. Koresko of the Koresko Defendants would pose a conflict of interest. (Docket No. 443). The Court granted the motion to withdraw by Montgomery, McCracken on June 30, 2013 (Docket No. 456).

On July 9, the Court entered a modified version of the June 28, 2013 order, removing three bank accounts included in the 16 bank accounts frozen on June 28, 2013, but otherwise continuing the temporary freeze. (Docket No. 407). In this order, the Court also declined to install an independent fiduciary, as suggested in the DOL's Application, without first holding a full evidentiary hearing on the matter.

On July 23, 2013, the Court denied the Koresko Defendants' motion to postpone the August 12, 2013 evidentiary hearing. (Docket No. 434). The Court also issued a third interim order (Docket No. 436), in response to the Koresko Defendant's attempts after July 8, 2013, to remove cash value from insurance policies at issue.

The Court again found a likelihood of success on the merits of the DOL's ERISA claims and its claims of breach of fiduciary duties and that there was a probability of irreparable injury to the public and to the plans and their participants and beneficiaries without the relief requested. The Court

prohibited the Koresko Defendants from expending or otherwise disposing of the cash value, or reducing the value, of any life insurance policies owned by or for the benefit of REAL VEBA/SEWBPT or its plans or arrangements. The insurance company was permitted to deduct premiums or charges to keep the policies in force. The Court also required information from the Koresko Defendants regarding current applications to the life insurance companies and an accounting of the policies.

On July 25, 2013, a suggestion of bankruptcy was filed by REAL VEBA, SEWBPT, PPT, PennMont, KAPC, and KLP in several cases related to this death benefits arrangement. The Court granted the automatic stay triggered by the filing of a bankruptcy proceeding in the above-captioned Castellano, Oswood, and Larkin cases on July 29, 2013, as well as in Sharkey et al. v. Penn Public Trust et al., No. 12-1166 (E.D. Pa.) and Neste et al. v. General American Life Insurance Company et al., No. 09-4581 (E.D. Pa.) on August 1, 2013. The Court issued on July 29, 2013, an order that the DOL case shall remain active and proceed because the Department of Labor's action was exempt from the automatic stay under 11 U.S.C. § 362(b)(4), excepting actions to enforce a governmental unit's police or regulatory power. (Docket No. 446).

The Court scheduled depositions of John J. Koresko, Lawrence Koresko, and Larry Townsend in anticipation of the

-9-

evidentiary hearing scheduled for August 12, 2013.  (Docket No. 447).  The Koresko Defendants, however, filed a motion for reconsideration of the Court's automatic stay decision on July 30, 2013.  (Docket No. 449).  The Court, in response, continued the depositions and the August 12, 2013 evidentiary hearing until the motion for reconsideration was briefed and decided and because the entity defendants were without counsel as a result of the motion to withdraw.  (Docket No. 457).

On August 27, while the Koresko Defendants' respective bankruptcy actions were still in progress, the DOL filed a Motion for Clarification of Order and Supplemental Order.  The Court received a response to that motion on September 3, 2013, in the time period ordered by the Court.  (Docket No. 477).

On August 29, the Court denied the Koresko Defendants' Motion for Reconsideration in an order and memorandum bearing that date.  The Court again held that the DOL's action was exempt from the bankruptcy stay under 11 U.S.C. § 362(b)(4). (Docket Nos. 474, 475).  The Court also requested a proposed schedule from the parties in the DOL case as to proceeding with the preliminary injunction hearing that had been continued.  The DOL responded with a schedule on September 9, 2013 (Docket Nos. 481, 482), as ordered, and Mr. Koresko notified the Court that he was unable to comply with the Court's order due to illness.

In the bankruptcy actions before Judge FitzSimon, the six Koresko debtors filed for joint administration of the bankruptcy actions and applied for Hangley Aronchick Segal Pudlin & Schiller to serve as counsel for all six debtors. (Docket No. 8).[2] The bankruptcy court denied those motions on August 9, 2013. (Docket No. 45). On August 26, the bankruptcy court issued another order that required the debtors to file an application for new counsel by August 29, 2013, or the case would be dismissed. (Docket No. 75). The bankruptcy court reasoned that no counsel was appointed to represent the debtor (REAL VEBA), proposed counsel could not demonstrate that it could represent the debtor, and the debtor failed to demonstrate the propriety of the proposed retainer.

On August 30, REAL VEBA filed an application in the bankruptcy court to appoint Dilworth Paxson LLP ("Dilworth") as counsel, as well as to retain Dilworth in three of the related cases (with debtors SEWBPT, PPT, and PennMont). (Docket No. 82). The bankruptcy court issued an order scheduling a September 3, 2013 telephone conference for the debtor to show cause why the case should not be dismissed. (Docket No. 84).

---

[2] There were six separate Chapter 11 petitions filed in the bankruptcy court on behalf of REAL VEBA (No. 13-16440), SEWBPT (No. 13-16441), PPT (No. 13-16443), PennMont (No. 13-16444), KAPC (No. 13-16445), and KLP (No. 13-16446). The docket numbers used to describe the bankruptcy proceedings originate from In re Regional Employers Assurance Leagues Voluntary Employees' Beneficiary Association Trust, No. 13-16440 (E.D. Pa. Bankr.).

-11-

Finally, following the September 3, 2013, hearing, the bankruptcy court dismissed all six of the Koresko debtors' cases. The bankruptcy court reasoned that four related debtors were seeking to retain a single law firm (Dilworth), which was a proposal specifically precluded by "substantial and pervasive conflicts of interest among three of these related debtors" at prior hearings. (Docket No. 89). The bankruptcy court reasoned that the law of the case doctrine applied to preclude relitigation of this finding.

Following the dismissal of the bankruptcy actions, the Dilworth firm requested a case management conference in this Court by letter. That request was denied on September 6, 2013, because Dilworth had not entered an appearance in the DOL case pending in this Court, and there was no appeal from the bankruptcy court pending before this Court.

On September 10, 2013, SEWBPT, as represented by Dilworth Paxson, filed a Motion to Modify Freeze Orders and for Expedited Consideration. In that motion, SEWBPT requested that the Court modify the prior freeze orders to permit payment of Dilworth and other bankruptcy professionals in order for the Koresko Defendants to appeal the dismissal of the bankruptcy cases. The motion argued that Dilworth would "work to utilize the organizational structure that the bankruptcy process provides to devise an overarching solution to the concerns

-12-

surrounding SEWBPT and its affiliates." (Docket No. 485 at 1-2). The Court issued an order scheduling the hearing on September 16, 2013 to deal with several of the outstanding motions.

One of the most recent cases dealing with these death benefit arrangements, <u>Ben-Lin Associates</u>, was filed in conjunction with a motion for a temporary restraining order and preliminary injunction. (Docket No. 3). In that motion, and as reflected in the DOL's Motion for Clarification of Order and Supplemental Order, the Koresko Defendants sent letters, in late August 2013, to several "persons associated with REAL VEBA or Single Employer Welfare Plan Trust," employers participating in Plans with assets in REAL VEBA and/or SEWBPT, stating that plan participants were required to pay a reorganization fee assessment and general administrative fee assessment by September 13, 2013, at 5:00 pm. If the participants failed to pay the fees, participants' rights in the benefits plan at issue would be "irrevocably ended" at that time and "the right to claim benefits by all eligible participants shall cease forever." The employer would forfeit its right to participate in the Trust and their participants' beneficiaries would be rendered ineligible for death benefits.

The Court granted the DOL's Motion for Clarification of Order and Supplemental Order in part on September 11, 2013,

to prevent the Koresko Defendants from cutting off plan beneficiaries' benefits on September 13, 2013. (Docket No. 489). These letters illustrate some of the acts taken by the Koresko Defendants, while in bankruptcy proceedings, that circumvent the spirit of this Court's prior freeze orders.

As reflected in the record discussed above, and as argued at the September 16, 2013, hearing, the DOL and the private litigants have demonstrated a substantial likelihood of success on the merits of their ERISA claims and their claims of breach of fiduciary duties and the probability of irreparable injury to the public and to the plans and their participants and beneficiaries absent the relief requested.

The Court has no choice but to appoint an independent fiduciary over the trusts at issue in these cases. The Court has attempted to maintain the status quo until Mr. Koresko's alleged health problems were improved. But Mr. Koresko has continued to violate the spirit of the Court's orders at every turn.

- As an initial matter, other than an initial conclusory affidavit from a physician that was based primarily on Mr. Koresko's statements to the physician and no clinical evaluation, Mr. Koresko has not submitted any additional affidavit or recent medical records substantiating his condition although ordered to do so by the Court.

- Mr. Koresko circumvented the Court's initial freeze order by contacting insurance companies and attempting to extract cash value out of the

> insurance policies at issue in the lawsuits pending before this Court.
>
> — Mr. Koresko filed bankruptcy proceedings on behalf of several of the defendants to try and take advantage of the automatic stay to avoid the evidentiary hearing scheduled by the Court.
>
> — During the bankruptcy proceedings, the Koresko Defendants threatened to cut off plan participants' benefits "forever" unless those participants paid fees to KLF, referencing the costs of reorganization and the Koresko Defendants' bankruptcy actions.

After recent exigencies concerning plan funds and potential termination of participants' and beneficiaries' benefits, the Court is greatly concerned about its current inability to inventory any diverted assets and all other assets of the REAL VEBA, SWEBPT, and its constituent employer-level plans or arrangements, as well as allocating those assets to participants and beneficiaries of the plans. The Court now sees a real emergency posed, in light of these recent developments, the bankruptcy filings, and correspondence from the Koresko defendants attempting to get payments from plan beneficiaries, in getting control of the dispersed trust assets and determining the state of those assets. An independent fiduciary will accomplish those tasks with oversight by the Court.

An appropriate Order has issued, dated September 16, 2013.